# Authority of the Secretary of the Treasury Under the New York City Loan Guarantee Act of 1978

The authority of the Secretary of the Treasury to issue guarantees under the New York City Loan Guarantee Act of 1978, P.L. No. 95–339 and P.L. No. 95–415, was not affected by a rider in the Senate appropriation bill, H.R. 7631, under § 101(a)(3) of the Continuing Appropriations Resolution, P.L. No. 96–369, 94 Stat. 1351.

Section 101(a)(3) of the Continuing Appropriations Resolution was intended to distinguish between matters considered by both the Senate and the House of Representatives in their appropriations bills, for which the more restrictive of the two provisions on an agency's authority is to govern, and matters considered by only one House in its appropriations bill, for which the authority and conditions of FY 1980 appropriations are to govern.

The restriction on the Secretary of the Treasury's authority to issue guarantees under the New York City Loan Guarantee Act of 1978 is found only in the Senate version of the appropriations bill pertaining to the New York City Loan Guarantee program and had not been considered by the House of Representatives; therefore, the Senate rider did not operate (under § 101(a)(3) of the Continuing Appropriations Resolution) to restrict the Secretary's authority to issue New York City loan guarantees.

The Attorney General does not have the authority to issue opinions on questions arising out of a business transaction between a private person and the government when the private person has insisted on receiving an Attorney General opinion for his benefit and the requesting department head has no real concern about the question.

The Attorney General will issue opinions related to business transactions between the government and private persons only when the transaction raises a substantial and genuine issue of law arising in the administration of a Department.

October 2, 1980

THE SECRETARY OF THE TREASURY

MY DEAR MR. SECRETARY: You have asked my opinion whether a rider contained in the Senate-passed version of H.R. 7631, concerning administrative funds for the New York City Loan Guarantee program, affects your authority to issue guarantees pursuant to the New York City Loan Guarantee Act of 1978, Pub. L. Nos. 95–339 and 95–415. For reasons elaborated below, I conclude that the rider in question has not taken effect, and therefore does not restrict your authority under the Guarantee Act.

In pertinent part, H.R. 7631, as passed by the Senate, provided:

> For necessary administrative expenses as authorized by the New York City Loan Guarantee Act of 1978 (Public Law 95–415), $922,000: *Provided, That none of these funds*

64

> *may be used to administer programs to issue loan guarantees to New York City for the purpose of permitting the Municipal Assistance Corporation to use the proceeds of its borrowings in fiscal years 1981 and 1982 to meet the City's financing needs after fiscal year 1982.*

The italicized language is the rider, which was a committee amendment. 126 Cong. Rec. S 12,589 (daily ed. Sept. 15, 1980). There is no provision similar to the rider in the House-passed version of the bill.

As fiscal year 1980 drew to a close, there was no opportunity for the normal conference procedure to resolve differences between the bills, and Congress found it necessary to provide continuing appropriations through H.J. Res. 610 for a number of agencies having pending appropriations. For agencies whose appropriations had passed both Houses, the Resolution provides as follows, in § 101(a)(3):

> Whenever the amount which would be made available or the authority which would be granted under an Act listed in this subsection as passed by the House as of October 1, 1980, is different from that which would be available or granted under such Act as passed by the Senate as of October 1, 1980, the pertinent project or activity shall be continued under the lesser amount or the more restrictive authority: *Provided,* That where an item is included in only one version of an Act as passed by both Houses as of October 1, 1980, the pertinent project or activity shall be continued under the appropriation, fund, or authority granted by the one House, but at a rate for operations not exceeding the current rate or the rate permitted by the action of the one House, whichever is lower, and under the authority and conditions provided in applicable appropriation Acts for the fiscal year 1980.

The apparent purpose of § 101(a)(3) is to distinguish between matters considered by both Houses, for which the more restrictive of the two provisions is to govern, and matters considered by only one House, for which "authority and conditions" are to revert to those found in fiscal year 1980 appropriations.

Because the rider is found only in the Senate version of the underlying 1981 appropriations bill, and the issue of restricting the mode of administering New York City loan guarantees was not taken up in the House, § 101(a)(3) of H.J. Res. 610 specifies that the rider falls within the proviso as an "item included in only one version of an Act." Therefore, it is superseded by the "authority and conditions" found in applicable 1980 appropriations.

This reading of the resolution is confirmed by the following explanation provided by the Managers in the Conference Committee Report on H.J. Res. 610:

> The Committee of Conference agrees that, for the purposes of this resolution in interpreting the language contained in Section 101(a)(3) concerning restrictive authority included in only one version of an Act as passed by the House and Senate, the restrictive authority, as it applies to the proviso concerning the New York City Loan Guarantee Program, contained in the 1981 HUD Independent Agency Appropriation Act, must have been carried in the applicable Appropriation Act for Fiscal Year 1980, before it is operative in Fiscal Year 1981.

The rider was "included in only one version of an Act" within the meaning of the proviso to § 101(a)(3), and was therefore, by the terms of the proviso, superseded by the applicable appropriation act for fiscal year 1980, which contains no such limitation. I therefore conclude that the rider has not taken effect, and does not restrict your authority in administering the Guarantee Act.*

Sincerely,
BENJAMIN R. CIVILETTI

---

*As you know, Attorney General Elliot Richardson adopted the formal policy on October 1, 1973, of not issuing opinions regarding the validity of guarantees or other obligations issued by federal agencies unless the opinion request raises a genuine issue of law. Successive Attorneys General, including myself, have adhered to this policy. In addition, Attorneys General have opined that they do not have the authority to issue opinions when it is apparent that the request has been made, not because the requestor has any real concern about his authority, but because private persons, who engage in transactions with the United States, have insisted upon such an opinion for their benefit. 39 Op. Att'y Gen. 11, 17-19 (1937); 20 Op. Att'y Gen. 463, 464 (1892). Because your request raises a genuine issue of law, I believe that an Attorney General's opinion on the narrow issue presented is appropriate. I am also persuaded that this is a legal issue over which you have a serious concern and, for that reason, I believe I have the authority to issue this opinion. I am troubled, however, by the insistence of private lawyers involved in the New York guarantee transaction on receiving an Attorney General opinion addressing this question. I ask you to inform private persons who transact business with your department that the Attorney General will not issue opinions solely because they feel it is important to protect them or guide them in their transactions, and that opinions related to business transactions with the government will be issued only when the transaction raises a substantial and genuine issue of law arising in the administration of a department.